IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| STEVEN JOSEPH CONNOLLY,<br><br>    Plaintiff,<br><br> vs.<br><br>TRIWEST HEALTHCARE<br>ALLIANCE CORP.; and JOHN DOES<br>1-10,<br><br>    Defendants. | Case No. 1:19-cv-00385-HG-RT<br>(Other Non-Vehicle Tort)<br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION** |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................1

II.  RELEVANT BACKGROUND ....................................................2

    A.   Factual Allegations.................................................................2

    B.   Defendant and its Administration of Medical Benefits Under
        the VA .....................................................................................3

        1. Veterans' Health Care Eligibility Reform Act of 1996...................3

        2. The Veterans Access, Choice, and Accountability Act of 2014 ......3

        3. The Veterans Judicial Review Act ...................................................6

    C.   Procedural History.................................................................8

III. LEGAL STANDARDS ...........................................................10

    A.   RCCH Rule 28.....................................................................10

    B.   FRCP Rule 4(m)..................................................................10

    C.   FRCP Rule 12(b)(1) ............................................................11

IV.  ARGUMENT..........................................................................12

    A.   This Lawsuit Should be Dismissed under RCCH Rule 28 and FRCP
        Rule 4(m)..............................................................................12

        1. The Danger of Prejudice to Defendant..........................................14

        2. The Length of Delay/Impact on the Proceedings...........................15

        3. Plaintiff's Reason for the Delay ....................................................16

4. Plaintiff's Lack of Good Faith..........................................................17

B.    This Lawsuit Should be Dismissed under Rule 12(b)(1), as this Court Lacks Jurisdiction................................................................................17

1. Defendant is Entitled to *Yearsley* Immunity ..................................18

2. Plaintiff has Failed to Follow the VJRA ........................................22

V.    CONCLUSION ............................................................................26

ii

# TABLE OF AUTHORITIES

**Cases**         **Page(s)**

*Ahanchian v. Xenon Pictures, Inc.*
  624 F.3d 1253 (9th Cir. 2010) ...............................................................11

*Arbaugh v. Y&H Corp.*
  546 U.S. 500 (2006) ...............................................................................11

*Boudette v. Barnette*
  923 F.2d 754 (9th Cir.1991) ..................................................................12

*Briones v. Riviera Hotel & Casino*
  16 F.3d 379 (9th Cir. 1997) ...................................................................11

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*
  797 F.3d 720 (9th Cir. 2015) .................................................................21

*Campbell-Ewald Co. v. Gomez*
  136 S. Ct. 663 (2016) .............................................................................19

*Cross v. United Airlines*
  No. 05-03398, 2010 WL 11475556 (C.D. Cal. August 11, 2010, *aff'd* 510 Fed.
  Appx. 517 (9th Cir. 2013)......................................................................14

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*
  888 F.3d 640 (4th Cir. 2018) ........................................................ 18, 19, 20, 21

*Demoruelle v. United States*
  Civil 15-00195 LEK-KSC, 2015 WL 5680325 (D. Haw. Sept. 25, 2015) .........23

*Elliott v. Dep't of Soc. Servs*.
  No. 4:06-CV-1383CDP, 2007 WL 686975 (E.D. Mo. Mar. 5, 2007).................18

*Godfrey v. United States*
  No. CV 17-238, 2017 WL 5492192 (W.D. La. Nov. 14, 2017)........................24

*Gramercy Grp., Inc. v. D.A. Builders, LLC*
  No. CV 16-00114 JMS-KSC, 2016 WL 9383251 (D. Haw. Mar. 16, 2016)......12

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr.
  20, 2010*, No. MDL 2179, 2016 WL 614690 (E.D. La. Feb. 16, 2016)..............22

iii

*In re Russell*
    155 F.3d 1012 (8th Cir. 1998) ............................................................................18

*Johnson v. United States*
    640 F. App'x 601 (8th Cir. 2016) ......................................................................23

*Keselyak v. Curators of the Univ. of Missouri*
    200 F. Supp. 3d 849 (W.D. Mo. 2016) ............................................................19

*Keselyak v. Curators of Univ. of Missouri*
    695 F. App'x 165 (8th Cir. 2017) ......................................................................19

*Kinder v. Midwest Marine, Inc.*
    No. 14-4133-CV-C-MJW, 2015 WL 12835687 (W.D. Mo. Mar. 20, 2015)........4

*Lane v. Pena*
    518 U.S. 187 (1996)............................................................................................18

*Largey v. TriWest Healthcare All. Corp.*
    No. 08-00471 HG-LEK, 2009 WL 2870160 (D. Haw. Sept. 8, 2009)...............13

*Leite v. Crane Co.*
    749 F.3d 1117 (9th Cir. 2015) ...........................................................................20

*Lemoge v. United States*
    587 F.3d 1188 (9th Cir. 2009) ...........................................................................11

*Markray v. AT & T-SBC-Pacific Bell*
    No. 07-08001, 2010 WL 3220096 (C.D. Cal. August 13, 2010) .......................14

*Mehrkens v. Blank*
    556 F.3d 865 (8th Cir. 2003) .............................................................................24

*Mendez v. Knowles*
    556 F.3d 757 (9th Cir.2009) ..............................................................................13

*Minns v. Peake*
    No. 07-7640, 2010 WL 11530840 at (C.D. Cal. May 21, 2010), *aff'd* 466 Fed.
    Appx. 619 (9th Cir. 2012)..................................................................................14

*Pincay v. Andrews*
    389 F.3d 853 (9th Cir. 2004) .............................................................................11

iv

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*
   507 U.S. 380 (1993) ..................................................................... 11, 13

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*
   507 U.S. 380 (1993) ...........................................................................12

*Price v. United States*
   228 F.3d 420 (D.C. Cir. 2000) ...........................................................25

*Quinn v. Cornerstone Strategic Advisors, LLC*
   No. 04CV2417 JAH(AJB), 2007 WL 2462112 (S.D. Cal. Aug. 27, 2007) ........16

*Radford v. United States*
   178 F. Supp. 3d 784 (E.D. Mo. 2016) ................................................24

*Railroad Telegraphers v. Railway Express Agency, Inc.*
   321 U.S. 342 (1944)...........................................................................15

*Reitz v. Nationstar Mortg., LLC*
   954 F. Supp. 2d 870 (E.D. Mo. 2013) .................................................7

*Savage v. Glendale Union High Sch. Dist. No. 205*
   43 F.3d 1036 (9th Cir. 2003) .............................................................11

*U.S. ex rel. Paulos v. Stryker Corp.*
   No. 11-0041-CV-W-ODS, 2013 WL 2666346 (W.D. Mo. June 12, 2013), *aff'd*,
   762 F.3d 688 (8th Cir. 2014) ..............................................................7

*Veterans for Common Sense v. Shinseki*
   678 F.3d 1013 (9th Cir. 2012) ....................................................... 23, 26

*Yearsley v. W.A. Ross Const. Co.*
   309 U.S. 18 (1940)........................................................................ 17, 18

**Federal Statutes**

28 U.S.C. § 8153(a)(1)...........................................................................21

38 U.S.C. § 1701 ...................................................................................4

38 U.S.C. § 1703 ...................................................................................4

38 U.S.C. § 511(a) .............................................................................6, 23

v

38 U.S.C. § 7104 ....................................................................................7, 23

38 U.S.C. § 7252(a) ..............................................................................7, 23

38 U.S.C. § 7291 ....................................................................................7, 23

38 U.S.C. § 7292 ....................................................................................7, 23

38 U.S.C. § 8153(a)(1) ............................................................................3, 4

Pub. L. No. 104-262, 110 Stat. 3177 ..........................................................3

**Hawai`i Statutes**

H.R.S. § 657-7.............................................................................................15

**Rules**

F.R.C.P. 12(b)(1) ....................................................................................7, 11

F.R.C.P. 12(b)(6) ..........................................................................................7

F.R.C.P. 4(m) ..............................................................................................10

R.C.C.H. 28 .................................................................................................10

**Regulations**

38 C.F.R. § 17.1500 ......................................................................................4

38 C.F.R. § 17.1500(b) .................................................................................4

38 C.F.R. § 17.1515 ......................................................................................4

Dept. of Veterans Affairs Veterans Health Administration, VHA Directive 1032...6

vi

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiff Steven Joseph Connolly's ("Plaintiff") Complaint should be dismissed with prejudice, as it is both procedurally and substantively defective.  As to procedure, Plaintiff's Complaint was originally filed in the Circuit Court for the First Circuit, State of Hawai`i ("state court") on September 28, 2017; it has now been more than two years since the Complaint was filed, and nearly one year since the state court-ordered deadline for Plaintiff to serve the Complaint.  Although Plaintiff had filed two motions in state court seeking extensions of time to serve his Complaint, the second motion, filed April 29, 2019 by his new counsel, fails to show *any* reason for Plaintiff's failure to serve the Complaint timely, and does not present any argument or factual support for the sort of excusable neglect that might excuse such untimely service.  Dismissal of Plaintiff's Complaint, with prejudice, is warranted on this basis alone.

As to substance, Plaintiff has not stated a claim that is subject to review by this Court.  Specifically, Plaintiff claims that Defendant TriWest Alliance Healthcare Corp. ("Defendant") effectively denied him medical benefits under a Department of Veterans Affairs ("VA") program (in the form of an alleged failure to refer him to a non-VA provider).  But because that claim amounts to allegations of the administrative denial of benefits, it must be pursued under an

administrative appeals process before it can be heard in court—and even then, the available forum for review is limited, and does not include this Court.  Moreover, because Defendant administers the subject VA program pursuant to non-discretionary terms in its contract with the federal government, Defendant qualifies for derivative sovereign immunity from this lawsuit.  Based on the foregoing, as further set forth below, Plaintiff's claims cannot be maintained here, and his Complaint should be dismissed with prejudice.

## II.     RELEVANT BACKGROUND

### A.     Factual Allegations

Although the Complaint is silent with respect to his veteran status, Plaintiff's claims are premised upon his being a veteran, entitled to VA benefits. Defendant is an Arizona corporation that administers the Veterans Choice Program ("VCP"), as further discussed below.

The Complaint appears to claim "negligence" arising from Defendant's alleged failure to refer Plaintiff to a non-VA dermatologist for medical care under the VCP.  Exhibit "A," Dkt. 1-4, Complaint at ¶¶11 and 13. Specifically, Plaintiff alleges that Defendant "failed to arrange for, secure, schedule, select, and monitor the referral of Plaintiff to a non-VA Medical Provider, and specifically a Dermatologist, for additional medical treatment and care, or failed to notify and advise Plaintiff of such referral."  *Id.*

2

Although his allegations are not entirely clear, Plaintiff seeks damages related to medical care, emotional distress, and loss of the enjoyment of life. *Id.* at ¶¶14 and 16. Regardless of how they are couched, Plaintiff's claims should be dismissed as a matter of equity based on his gross failure to serve his Complaint in a timely manner. Even if the Complaint had been timely served, this Court does not have subject-matter jurisdiction over Plaintiff's claims or his alleged damages.

## B.   Defendant and its Administration of Medical Benefits Under the VA

Plaintiff's allegations against Defendant arise from Defendant's administration of the VCP. Exhibit "A," Complaint at ¶¶11 and 13.

### 1.   Veterans' Health Care Eligibility Reform Act of 1996

Congress authorized healthcare for veterans in explicit terms in the Veterans' Health Care Eligibility Reform Act of 1996. *See* Pub. L. No. 104-262, 110 Stat. 3177. Congress gave the Secretary of Veterans Affairs the authority to "make arrangements, by contract or other form of agreement . . . of health-care resources between Department health-care facilities and any health-care provider, or other entity or individual." 38 U.S.C. § 8153(a)(1).

### 2.   The Veterans Access, Choice, and Accountability Act of 2014

In 2014, Congress passed the Veterans Access, Choice, and Accountability Act ("VACAA") to augment the healthcare choices available to

3

veterans.  38 U.S.C. § 1701 *et seq.*; 38 C.F.R. § 17.1500 *et seq.*  The VACAA

established the Veterans Choice Program ("VCP"), a program to furnish hospital

care and medical services to veterans through eligible non-VA healthcare

providers.  38 U.S.C. § 1703; 38 C.F.R. § 17.1500(b).

To do this, the VA has to work with the veterans to schedule

appointments with non-VA providers. *See* 38 C.F.R. § 17.1515 (noting that a

veteran eligible under the VCP may choose to see a non-VA provider). Instead of

communicating with all of the eligible veterans itself, the VA validly authorized

TriWest to administer the VCP, as it was statutorily allowed to do.  *See* 38 U.S.C.

§ 8153(a)(1) (giving the VA authority to "make arrangements, by contract or other

form of agreement . . . of health-care resources" with any "entity or individual").

In November 2014, Defendant was awarded a contract by the VA to administer the

VCP.  Declaration of Scott Montplaisir at ¶3.[1]  During the times relevant to the

------

[1] As discussed further *infra*, this Court may analyze Defendant's VA contract, which is authenticated by declaration, under a 12(b)(1) "factual attack."  However, the Court may also review a contract that is, as here, "necessarily embraced by the pleadings" and "integral to the plaintiff's claims" because such contract is not "outside the pleadings."  *E.g.*, *Kinder v. Midwest Marine, Inc.*, No. 14-4133-CV-C-MJW, 2015 WL 12835687, at *3 (W.D. Mo. Mar. 20, 2015) (citing *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014)).  Plaintiff's Complaint alleges that Defendant "engaged in a business relationship with the United States of America, Department of Veteran Affairs," and disputes Defendant's administration of the VCP.  Exhibit "A," Complaint, at ¶¶3, 11, 13.  Thus, Defendant's VA contract is necessarily embraced by and integral to the Complaint.

4

Complaint, Defendant administered the VCP through a comprehensive network of its civilian providers located in 28 states and three territories. *Id.*  A copy of that contract is attached hereto as Exhibit "B."[2]

Under the Contract, TriWest must "[p]rovide a management infrastructure and processes to support orders of authorized care by the VA." Exhibit "B," Contract, at 42, § x.1.  The procedures to be performed by TriWest under the Contract are specifically dictated:  The VA sends TriWest an Authorization Form that lists the veteran's name, contact information, and the type of medical service needed.  *Id.*   TriWest then works with the veteran to schedule an appointment for that medical service. *Id.* at 47, § e.i ("The Contractor shall contact the Veteran to schedule an appointment.").  TriWest must attempt to contact the veteran "a minimum of three times" over five business days after it receives the Authorization Form from the VA. *Id.* at § e.i.2.  If TriWest cannot reach the veteran, it has to send a letter notifying the veteran that it tried to contact him or her and telling the veteran to call TriWest to schedule the appointment. *Id.* at §§ e.i.3.a and e.i.3.b.  Simply put, the detailed requirements set forth in the

---

[2] Portions of the contract between Defendant and VA contain highly sensitive, competitive pricing information, which have been redacted.  These portions are irrelevant to Plaintiff's claims and this Motion.  The attached conformed contract has been amended numerous times between VA and Defendant, but the relevant provisions have remained the same since the original contract. Declaration of Scott Montplaisir at ¶3.

Contract between TriWest and the VA dictate the actions TriWest is required to perform with respect to the coordination of benefits.

### 3.    The Veterans Judicial Review Act

The manner in which a claimant may appeal decisions as to VCP eligibility and/or the provision of benefits is dictated by the Veterans Judicial Review Act ("VJRA").  The VJRA provides, in relevant part:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a).

Additionally, VHA Directive 1032 "provides policy guidance regarding Health Benefit Appeals and certification of such appeals to the Board of Veterans' Appeals," and outlines the process for Health Benefit Appeals, beginning with "when the Department of Veterans Affairs (VA) makes a determination regarding benefits, the Veteran may file a 'Notice of Disagreement.'"  Dept. of Veterans Affairs Veterans Health Administration, VHA Directive 1032, Health Benefits Appeals Processing (2013), *available at*

6

https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2928.[3]

If a claimant disagrees with the initial decision, he or she may appeal to the Board of Veterans' Appeals.  38 U.S.C. § 7104.  An appeal of a Board of Veterans' Appeals decision must be made to the Court of Appeals for Veterans Claims, which Congress vested with "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals."  38 U.S.C. § 7252(a).  Claimants may appeal unsatisfactory decisions of the Court of Appeals for Veterans Claims to the Federal Circuit, which has exclusive appellate jurisdiction over such matters.  38 U.S.C. § 7292.  Finally, a claimant may appeal an unsatisfactory decision of the Federal Circuit to the Supreme Court.  38 U.S.C. § 7291.  Nothing permits a claimant to proceed directly to state or federal court.

---

[3] This Court may take judicial notice of VHA directives, which set forth governmental policy and are matters of public record, without looking outside the pleadings, as under a Rule 12(b)(1) "facial attack" otherwise entitled to Rule 12(b)(6) safeguards. *See U.S. ex rel. Paulos v. Stryker Corp.*, No. 11-0041-CV-W-ODS, 2013 WL 2666346, at *3 (W.D. Mo. June 12, 2013), *aff'd*, 762 F.3d 688 (8th Cir. 2014) (taking judicial notice of "reports from government agencies"); *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 876 (E.D. Mo. 2013) (taking judicial notice of "the operative HAMP Guidelines, as published by the United States Department of the Treasury" and citing cases for the proposition that "wherever, by the express language of any act of congress, power is [e]ntrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice.").

7

C.    **Procedural History**

Plaintiff filed this lawsuit in state court nearly two years ago, on September 28, 2017.  *See* Exhibit "A," Dkt. 1-4, Complaint.  On March 2, 2018, Plaintiff sought and obtained a first extension of time to serve the Complaint and Summons, from March 28, 2018 to September 28, 2018.  *See* Dkt. 4-8 at PageID# 61-62, Order Granting Ex Parte Motion for First Extension of Time to Serve Complaint and Summons and First Extension of Time to File Plaintiff's Pretrial Statement entered on March 2, 2018.  However, Plaintiff failed to serve Defendant with the Complaint and Summons within that extended deadline.

On April 29, 2019, Plaintiff, through newly-retained counsel, Chris Bouslog, Esq., sought a second extension of time from the state court to serve the Complaint and Summons, from the long-expired deadline of September 28, 2018 to October 28, 2019.  *See* Dkt. 4-12, Plaintiff's Ex Parte Motion for Second Extension of the Deadline for Service of the Complaint From September 28, 2018 to October 2, 2019 (the "Second Motion for Extension of Time").  The Second Motion for Extension of Time has ***not*** been granted.  *See* Dkt. 4-12 at PageID# 137.

Plaintiff's counsel's declaration in support of the Second Motion for Extension of Time obfuscates the facts.  While counsel acknowledges that "[t]he deadline for effecting service of the Complaint ran on September 28, 2018," he

8

represents that the requested extended deadline of October 28, 2019, would be "six months after [he] filed his appearance in this matter."  *See* Declaration of Counsel attached to the Second Motion for Extension of Time ("Bouslog Decl."), Dkt. 4-12 at PageID# 106-108 at ¶¶13-14.  Although counsel's formal appearance in this case was entered on April 26, 2019 (*see* Dkt. 4-10), he had previously appeared as Mr. Connolly's counsel in his related lawsuit in federal court against the United States (arising from the same events giving rise to this case), more than a year ago. The Complaint in that lawsuit, styled *Connolly v. United States of America*, Civil No. 18-00271 HG-RT, was filed on July 10, 2018 and features Mr. Bouslog's office on the caption.  A copy of the Complaint in that lawsuit is attached as Exhibit "C."  Based on that filing, Plaintiff had retained his current counsel as early as July 10, 2018–*i.e.*, **two months before the September 28, 2018 deadline to serve the instant Complaint**—but waited until April of 2019 to make his appearance and belatedly seek yet another extension of time to serve the Complaint and Summons in this case.

Because Plaintiff's Second Motion for Extension of Time has not been granted, the time within which to serve the Complaint and Summons has passed.  Nonetheless, on June 17, 2019—628 days[4] after the Complaint was filed

---

[4] 1 year, 8 months, 21 days.

9

(on September 28, 2017), and over 3.5 years[5] since the events at issue (*i.e.*, October

1, 2015 (*see* Exhibit "A," at ¶¶7 and 8))—Plaintiff served the Complaint and

Summons on Defendant.  *See* Dkt. 1-5 (Notice of Service of Complaint).

## III.   LEGAL STANDARDS

### A.   RCCH Rule 28

Before this matter was removed to this Court, Plaintiff was bound by

the six-month time period within which to serve the Complaint and Summons

under Rule 28 of the Rules of the Circuit Courts of Hawai`i ("RCCH").  That rule

provides:

> A diligent effort to effect service shall be made in all
> actions. An action or claim may be dismissed sua sponte
> with written notice to the parties if no service is made
> within 6 months after the action or claim has been filed.
> Such dismissal may be set aside and the action or claim
> reinstated by order of the court for good cause shown
> upon motion duly filed not later than ten (10) days from
> the date of the order of dismissal.

### B.   FRCP Rule 4(m)

Rule 4(m) of the Federal Rules of Civil Procedure imposes a 90-day

time limit for service as follows:

> If a defendant is not served within 90 days after the
> complaint is filed, the court—on motion or on its own
> after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that

---

[5] 3 years, 8 months, 17 days.

service be made within a specified time. But if the
plaintiff shows good cause for the failure, the court must
extend the time for service for an appropriate period.

Whether a plaintiff can show good cause for failing to the meet the

deadline to serve a complaint is predicated upon a finding of "excusable neglect."

*Lemoge v. United States*, 587 F.3d 1188, 1198 n3 (9th Cir. 2009).  To make that

determination, courts apply a four-factor equitable test based upon *Pioneer Inv.*

*Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 113 (1993) and *Briones v.*

*Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).[6]  That four factor

equitable test examines:  "(1) the danger of prejudice to the opposing party; (2) the

length of the delay and its potential impact on judicial proceedings; (3) the reason

for the delay; and (4) whether the movant acted in good faith."  *Ahanchian v.*

*Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).  The weighing of these

factors is up to the discretion of the district court.  *Pincay v. Andrews*, 389 F.3d

853, 860 (9th Cir. 2004).

## C.    FRCP Rule 12(b)(1)

Under FRCP Rule 12(b)(1), a court must dismiss a complaint if it

lacks subject-matter jurisdiction.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514

---

[6] *Pioneer* involved excusable neglect under Federal Rule of Bankruptcy Procedure
9006(b), and *Briones* involved a Rule 60(b) motion for relief from judgment.  The
Ninth Circuit applies the *Pioneer/Briones* factors in a variety of contexts, though,
including in deciding whether excusable neglect has been shown under Rule 4(m).
*See Lemoge*, 587 F.3d at 1198.

11

(2006).  A Rule 12(b)(1) motion may be raised as either a facial challenge or a factual challenge.  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n2 (9th Cir. 2003).  A facial challenge is based solely on the face of the pleadings whereas a factual challenge considers matters outside the pleadings.  *Id.*

To survive a motion to dismiss under Rule 12(b)(1), "Plaintiff must allege sufficient facts to show a proper basis for the court to assess subject matter jurisdiction over the action."  *Gramercy Grp., Inc. v. D.A. Builders, LLC*, No. CV 16-00114 JMS-KSC, 2016 WL 9383251, at *1 (D. Haw. Mar. 16, 2016).

## IV.    ARGUMENT

This lawsuit is procedurally defective under RCCH Rule 28 and FRCP Rule 4(m), and is substantively defective under Rule 12(b)(1).  Dismissal with prejudice is appropriate.

### A.    This Lawsuit Should be Dismissed under RCCH Rule 28 and FRCP Rule 4(m)

According to FRCP 4(m), "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." As this Court has explained,

> A plaintiff's showing of good cause, at a minimum, requires demonstrating excusable neglect. *See* [*Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir.1991) (citing *Hart v. United States*, 817 F.2d 78, 80–81 (9th Cir.1987))]. Excusable neglect is "a somewhat elastic concept" and should not be narrowly construed. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,

12

507 U.S. 380 (1993) (citation and quotation marks omitted).

The Supreme Court has stated that the determination of whether a plaintiff's actions constitute excusable neglect:

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the [plaintiff], and whether the [plaintiff] acted in good faith.

> *Id*. at 395 (citation omitted). Further, the Ninth Circuit has noted that " 'the weighing of Pioneer's equitable factors' must be left 'to the discretion of the district court in every case.' " *Mendez v. Knowles*, 556 F.3d 757, 765 (9th Cir.2009) (quoting *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir.2004))

*Largey v. TriWest Healthcare All. Corp*., No. 08-00471 HG-LEK, 2009 WL 2870160, at *2-*3 (D. Haw. Sept. 8, 2009).

The *Pioneer* factors here weigh against a finding of excusable neglect for Plaintiff's failure to serve the Complaint within the time prescribed by court rule and order.  Both the 6-month period in RCCH Rule 28 and the 90-day period in FRCP Rule 4(m) have long since passed.  So too has the state court-imposed extended deadline to serve the Complaint.  As such, this lawsuit should be dismissed.

13

### 1.    The Danger of Prejudice to Defendant

The danger of undue prejudice to the Defendant here is substantial, based on the considerable passage of time (more than 3.5 years from the events at issue in the Complaint), which will likely interfere with Defendant's ability to present evidence.  While the Complaint was filed nearly two years ago, the events giving rise to the Complaint allegedly occurred in *2015*.  *See* Exhibit "A," Dkt. 1-4, Complaint, at ¶¶7-8.  Allowing this lawsuit to proceed would require Defendant to rely on four-year-old memories of the underlying facts relevant to the specific allegations in the Complaint, including allegations of what Defendant's agents or others may or may not have advised Plaintiff.  *See id.* at ¶¶8-9, 11, 13; *see also Cross v. United Airlines*, No. 05-03398, 2010 WL 11475556 at *3 (C.D. Cal. August 11, 2010 (denying Rule 60(b) motion to revive case because requiring defendants to defend themselves more than a year after judgment was entered and long after the relevant events occurred is unfairly prejudicial), *aff'd* 510 Fed. Appx. 517 (9th Cir. 2013); *Minns v. Peake*, No. 07-7640, 2010 WL 11530840 at *2 (C.D. Cal. May 21, 2010) (denying Rule 60(b) motion to revive case where witnesses would be asked to testify regarding events occurring years earlier), *aff'd* 466 Fed. Appx. 619 (9th Cir. 2012); *Markray v. AT & T-SBC-Pacific Bell*, No. 07-08001, 2010 WL 3220096 at *3 (C.D. Cal. August 13, 2010) (denying motion seeking relief from judgment based on alleged excusable neglect and gross negligence,

14

where defendant asserts prejudice due to fading witness memories).  Here, as in many industries, year-over-year employee turnover is often significant, and witnesses may no longer be readily available, given the lengthy amount of time Plaintiff has allowed to pass.

Allowing Plaintiff's action to proceed despite his failure to comply with rule and court-imposed deadlines would also undermine the purpose of statutes of limitation that protect litigants from faded memories and stale claims. *Railroad Telegraphers v. Railway Express Agency, Inc*., 321 U.S. 342, 348-49 (1944) ("Statutes of limitation promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The right to be free of stale claims prevails over the right to prosecute them.").  For example, Plaintiff's "negligence" claim here has a two-year limitations period under Hawai`i Revised Statutes ("HRS") § 657-7, which would have expired in 2017.

### 2.    The Length of Delay/Impact on the Proceedings

The length of delay is substantial.  While Plaintiff had sought and obtained from the state court an initial brief extension of time to serve the Complaint and Summons from March 28, 2018 to September 28, 2018, Plaintiff failed to serve Defendant within that extended time period.  Instead, Plaintiff waited seven months after expiration of the September 28, 2018 deadline to seek

15

yet more time in his Second Motion for Extension of Time (Dkt. 4-12).  It has now

been almost a year since the court-ordered deadline to serve the Complaint and

Summons expired on September 28, 2018.  Neither Plaintiff nor his counsel have

explained or attempted to justify delaying nearly two years to serve the Complaint.

*See e.g., Quinn v. Cornerstone Strategic Advisors, LLC*, No. 04CV2417

JAH(AJB), 2007 WL 2462112 (S.D. Cal. Aug. 27, 2007) (granting dismissal

because the court found no good cause, and further declining to grant a

discretionary extension of time given that the plaintiff failed to effect service upon

the defendants until nearly three years after filing the original complaint).

### 3.   Plaintiff's Reason for the Delay

There is no good cause for the unreasonably lengthy delay, and

Plaintiff has offered none.  The declaration of Plaintiff's counsel in support of the

Second Motion for Extension of Time (Dkt. 4-12 at PageID# 106-108) fails to

offer ***any*** reason for Plaintiff's failure to either serve the Complaint or *timely* seek

another extension of the deadline.  It is anticipated that Plaintiff may argue that he

was without counsel in this matter from March 8, 2018 until April 26, 2019 when

his current counsel made his appearance (*see* Dkt. 4-9, indicating that prior counsel

withdrew on March 8, 2018), and so the lapse of the deadline during that time

should be excused.  Any such argument lacks merit.

As made clear in Exhibit "C," Plaintiff's current counsel in this case

16

made an appearance on behalf of Plaintiff in his related lawsuit in Federal Court filed on July 10, 2018 (*i.e., Connolly v. United States of America*, Civil No. 18-00271 HG-RT), apparently arising from the same events giving rise to this case. Plaintiff had clearly already engaged his new counsel as early as then, yet failed to timely serve Defendants in this matter by the court-imposed deadline. Instead, Plaintiff delayed and allowed the September 28, 2018 deadline to pass, and has not made any attempt to explain or to justify that delay. *See* Dkt. 4-12, Second Motion for Extension of Time, and Declaration of counsel attached thereto.

### 4.      Plaintiff's Lack of Good Faith

Plaintiff has not made any attempt to establish that the lengthy delay in service was justified, or that he has acted in good faith. Even though the deadline to serve the Complaint had passed, and even though the Second Motion for Extension of Time had not been granted by the state court, Plaintiff untimely served Defendant with the Complaint on June 17, 2019. Plaintiff had no authority to do so, and appears to have proceeded with service to guard against the probability that his untimely Second Motion for Extension of Time (*i.e.,* Dkt. 4-12) would be denied. Plaintiff's tactics should not be rewarded.

### B.      This Lawsuit Should be Dismissed under Rule 12(b)(1), as this Court Lacks Jurisdiction

Even if Plaintiff's untimely service of the Complaint is allowed to stand, dismissal is appropriate under Rule 12(b)(1) because (1) Defendant is

17

entitled to immunity from this lawsuit under *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940), and (2) Plaintiff has not pursued his claim in the proper forum as required by the VJRA.

### 1.   Defendant is Entitled to *Yearsley* Immunity

The Defendant is immune from Plaintiff's claims, as an agent of the United States government. "Under the concept of derivative sovereign immunity, stemming from the Supreme Court's decision in *Yearsley*, . . . agents of the sovereign are also sometimes protected from liability for carrying out the sovereign's will," including private contractors such as Defendant. *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018). Pursuant to the doctrine of derivative sovereign immunity under *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940), "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Id.* at 646 (quotation omitted) (citing *Yearsley*, 309 U.S. at 20–21).[7] As long as the

---

[7] As a threshold matter to the *Yearsley* immunity test, courts must ensure that the United States has not waived its immunity from suit invoking the particular alleged federal law. The United States is immune from all suits absent an express waiver of its immunity, which "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Here, the United States has not waived its immunity from claims regarding Veterans' benefits. *See e.g., Radford*, 178 F. Supp. 3d at 790; *Elliott v. Dep't of Soc. Servs.*, No. 4:06-CV-1383CDP, 2007 WL 686975, at *1 (E.D. Mo. Mar. 5, 2007); *see also In re Russell*, 155 F.3d 1012, 1013

18

authorization was validly conferred, "'there is no liability on the part of the contractor' who simply performed as the Government directed." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016) (quoting *Yearsley*, 309 U.S. at 20–21). "Authorization is 'validly conferred' on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization." *Cunningham*, 888 F.3d at 646–47 (citing *Yearsley*, 309 U.S. at 20; *Campbell-Ewald*, 136 S.Ct. at 672).

"*Yearsley* immunity," "the *Yearsley* doctrine/defense," or "derivative sovereign immunity" "operates as a jurisdictional bar to suit and not as a merits defense to liability." *Id.* at 650. "Sovereign immunity is a jurisdictional, threshold matter that is properly addressed under Rule 12(b)(1)." *Keselyak v. Curators of the Univ. of Missouri*, 200 F. Supp. 3d 849, 853 (W.D. Mo. 2016), *aff'd sub nom. Keselyak v. Curators of Univ. of Missouri*, 695 F. App'x 165 (8th Cir. 2017).

### a) The United States Authorized Defendant to be its Contractor

The federal government, through the VA, authorized Defendant to be its contractor, with Defendant administering the VCP within the legislated confines

---

(8th Cir. 1998) ("the United States has not waived its sovereign immunity as to review of VA procedures by any court other than the CVA, Federal Circuit, and Supreme Court."). Accordingly, this Court should next consider the *Yearsley* immunity test.

19

of the VACAA; Defendant is performing under a VA contract for services, to which it undisputedly adhered.  *See* Exhibit "B."[8]  As noted above, the detailed requirements set forth in the Contract between Defendant and the VA (Exhibit "B" hereto) dictate the specific actions Defendant is required to perform with respect to the coordination of benefits.  Simply put, *Defendant has no discretion* with respect to its actions in coordination/administration of benefits.

Rather, Defendant's actions to administer the VCP were non-discretionary and were done at the express direction of the U.S. government.[9]  *See Cunningham*, 888 F.3d at 647–48 (finding contractor "adhered" to its contract to administer aspects of the HealthCare.gov website per the Affordable Care Act, which in turn directs the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services to establish a system to keep applicants

---

[8] Because Defendant's entitlement to *Yearsley* immunity is a jurisdictional fact not fully evident from the face of the Complaint, Defendant attaches hereto, as further support, a factual affidavit and public records.  Where, as here, a party brings a factual attack, a district court may look outside the pleadings to affidavits or other documents, without converting the motion into one for summary judgment or providing the non-moving party with the benefit of Rule 12(b)(6)'s safeguards.  *Leite v. Crane Co.*, 749 F.3d 1117, 1119 (9th Cir. 2015).  Plaintiff has the burden to prove jurisdictional facts by a preponderance of the evidence.  *Id.*

[9] Plaintiff even concedes that Defendant is indiscernible from the government with regard to his claims:  his Complaint states that "Defendant TRIWEST engaged in a business relationship with the United States of America, Department of Veteran Affairs (hereinafter "VA"), where it provided services to the VA . . . ."  Exhibit "A," Complaint, at ¶3.

20

informed about their eligibility for enrollment in a qualified health plan, leading to contracted administrators such as the defendant); *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) ("derivative sovereign immunity, as discussed in *Yearsley*, is limited to cases in which a contractor had no discretion in the design process and completely followed government specifications." (internal quotation omitted)).  As a result, the first *Yearsley* criterion is satisfied here.

> **b)     Defendant's VA Contract was a Proper Delegation from the United States**

The VA is vested with the authority to "make arrangements, by contract or other form of agreement . . . of health-care resources" with any "entity or individual."  28 U.S.C. § 8153(a)(1).  Defendant's VA contract is thereby a permissible means for the VA (and the government more broadly) to meet its "unquestioned need to delegate governmental functions" while avoiding "[i]mposing liability on private agents of the government[, which] would directly impede the significant governmental interest in the completion of its work." *Cunningham*, 888 F.3d at 643 (quotations omitted) (finding contract was "validly conferred" by government to defendant contractor pursuant to statutorily mandated directives under the Affordable Care Act).  There is no assertion in the Complaint that the VA was not authorized by Congress to engage private contractors to effect the statutorily mandated VCP under the VACAA.  To the contrary, and consistent

21

with post-*Campbell-Ewald* case law as to *Yearsley*-immune private contractors, the VACAA validly confers authorization to delegate VCP administration. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2016 WL 614690, at *9 (E.D. La. Feb. 16, 2016) (finding that the Clean Water Act mandates that the President direct all oil spill response efforts on navigable waters of the United States, including those actions undertaken by private parties, and that the federal government "validly conferred authority upon the Clean-Up Responder Defendants to carry out various oil spill response activities. As a result, . . . the Clean-Up Responder Defendants are immunized under the CWA."). The second *Yearsley* criterion is also met.

Because the VA has not waived immunity and the federal government has properly delegated administration of the VCP to Defendant by a statutorily authorized contract to which Defendant has adhered, the *Yearsley* standards are established. Defendant is therefore entitled to derivative sovereign immunity from this lawsuit, and Plaintiff's lawsuit should be dismissed with prejudice.

## 2. Plaintiff has Failed to Follow the VJRA

In addition to the immunity discussed above, this Court also lacks jurisdiction over Plaintiff's claims as pled, because he has not pursued his claim in the proper forum. From the face of the Complaint, Plaintiff seeks review of Defendant's administration of his alleged VCP benefits. However, Plaintiff has

not pursued his claim through the VJRA process.  The factual questions and legal conclusions to be resolved regarding the administration of VCP coverage are statutorily vested with the administrative bodies listed in the VJRA.  *See* 38 U.S.C. §§ 511(a); 7104; 7252(a); 7292; 7291, all quoted above.  The law and VHA Directives quoted above show that Plaintiff is required to pursue his claims through the VJRA process.

Because the VJRA requires pursuit of Plaintiff's claims arising out of the administration of benefits through administrative channels in the first instance, this Court does not have subject-matter jurisdiction.  *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012) ("[The VJRA] precludes jurisdiction over a claim if it requires the district court to review VA decisions that relate to benefits decisions . . .  including any decision made by the Secretary in the course of making benefits determinations") (internal quotation and citation omitted); *Demoruelle v. United States*, Civil 15-00195 LEK-KSC, 2015 WL 5680325 at *3 (D. Haw. Sept. 25, 2015) ("Thus, pursuant to [the VJRA] and the Ninth Circuit's holding in [*Veterans for Common Sense*], this Court lacks subject matter jurisdiction over this case [regarding VA benefits decisions], and it must be dismissed."); *Johnson v. United States*, 640 F. App'x 601, 602 (8th Cir. 2016) ("[W]e conclude that the district court properly determined it lacked subject matter jurisdiction over . . . claims related to reduction of Johnson's VA benefits . . .

23

because these claims were preempted under the Veterans' Judicial Review Act (VJRA)."); *Mehrkens v. Blank*, 556 F.3d 865, 869 (8th Cir. 2003) ("We hold that the VJRA is Mehrkens's exclusive remedy. . . ."); *Radford v. United States*, 178 F. Supp. 3d 784, 790-91 (E.D. Mo. 2016) ("The VJRA created the Court of Appeals for Veterans Claims and vested it with exclusive jurisdiction over disputes involving veterans' benefits."); *Godfrey v. United States*, No. CV 17-238, 2017 WL 5492192, at *2 (W.D. La. Nov. 14, 2017) (finding VJRA required dismissal, for lack of jurisdiction, of claims related to the VCP).

Plaintiff's Complaint alleges that Defendant was both obligated "to arrange for, secure, schedule, select, and monitor the referral of Plaintiff to a non-VA Medical Provider, and specifically a Dermatologist, for additional medical treatment and care", and in turn "failed to arrange for, secure, schedule, select, and monitor the referral of Plaintiff to a non-VA Medical Provider, and specifically a Dermatologist, for additional medical treatment and care, or failed to notify and advise Plaintiff of such referral." Exhibit "A," Complaint, at ¶¶9 and 11. Accordingly, Plaintiff's claim arises out of the administration and coordination of his alleged benefits under the VCP. Although Plaintiff couches his claims in terms of "negligence," this Court is precluded by statute from determining whether Defendant was negligent in its administration and coordination of Plaintiff's alleged benefits:

24

> Because a determination whether the VA acted in bad
> faith or with negligence would require the district court
> to determine first whether the VA acted properly in
> handling Price's request for reimbursement, judicial
> review is foreclosed by 38 U.S.C. § 511(a). The courts
> have consistently held that a federal district court may
> not entertain constitutional or statutory claims whose
> resolution would require the court to intrude upon the
> VA's exclusive jurisdiction.

*Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000). (internal citations

omitted).  As the Ninth Circuit has clarified, if a plaintiff's claims would require

the court to review decisions that relate to benefits decisions; determine whether

benefits were appropriately handled; or review decisions that would affect such

cases, *the District Court has no jurisdiction*, and the plaintiff must seek redress

through the appropriate alternative forum:

> Synthesizing these cases, we conclude that § 511
> precludes jurisdiction over a claim if it requires the
> district court to review "VA decisions that relate to
> benefits decisions," *Beamon,* 125 F.3d at 971, including
> "any decision made by the Secretary in the course of
> making benefits determinations," *Broudy,* 460 F.3d at
> 115. This standard is consistent with Congress's intention
> to "broaden the scope" of the judicial preclusion
> provision, H.R.Rep. No. 100–963, at 27, 1988
> U.S.C.C.A.N. at 5809, and is reflected in § 511(a)'s plain
> statement that we may not review a "decision by the
> Secretary under a law that affects the provision of
> [veterans'] benefits," 38 U.S.C. § 511(a). This preclusion
> extends not only to cases where adjudicating veterans'
> claims requires the district court to determine whether the
> VA acted properly in handling a veteran's request for
> benefits, but also to those decisions that may affect such
> cases. *See Price,* 228 F.3d at 422; *Thomas,* 394 F.3d at

25

974; *Broudy,* 460 F.3d at 114–15; *accord Beamon,* 125 F.3d at 971. If that test is met, then the district court must cede any claim to jurisdiction over the case, and parties must seek a forum in the Veterans Court and the Federal Circuit.

*Veterans for Common Sense*, 678 F.3d at 1025–26.

As Plaintiff's claims arise out of the administration and/or coordination of his alleged VA benefits under the VCP, this Court has no jurisdiction, and the Complaint should be dismissed with prejudice.

## V.   CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court grant its Motion and dismiss this lawsuit, in its entirety, with prejudice.

DATED:  Honolulu, Hawai`i, July 24, 2019.

/s/ John-Anderson L. Meyer
JOHN-ANDERSON L. MEYER
DANIEL J. CHENG

Attorneys for Defendant
TRIWEST HEALTHCARE
ALLIANCE CORPORATION

26